IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
DIVISION

| | |
|---|---|
| **HERCULES TIRE & RUBBER COMPANY INC.** | **PLAINTIFF/ COUNTER-DEFENDANT** |
| **v.** | **CIVIL ACTION NO. 2:16-CV-27-KS-MTP** |
| **ROBISON TIRE COMPANY, INC.** | **DEFENDANT/COUNTER-DEFENDANT/CROSS-PLAINTIFF** |
| **v.** | |
| **AMERICAN TIRE DISTRIBUTORS HOLDINGS, INC.** | **CROSS-DEFENDANT** |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss [22] filed by Plaintiff/Counter-Defendant Hercules Tire & Rubber Company, Inc. and Cross-Defendant American Tire Distributors Holdings, Inc. After reviewing the submissions of the parties, the record, and the applicable law, the Court finds that this motion should be granted in part and denied in part.

## I. BACKGROUND

On March 7, 2016, Plaintiff/Counter-Defendant Hercules Tire & Rubber Company, Inc. ("Hercules"), brought suit against Robison Tire Company, Inc. ("Robison"). On June 15, 2016, Robison filed its Answer [11], which asserted numerous counterclaims against Hercules and brought in American Tire Distributors Holdings, Inc. ("ATD-H"), as an additional party. ATD-H is a competitor of Robison and became the parent corporation of Hercules in January 2014.

Robison is a tire distributor and entered into a purchase agreement (the "HPA") with Hercules, which was renewed in November 2013. Under the HPA, Robison was granted exclusive territory to sell certain Hercules products. In August 2014, Robison fell behind on its payments to

Hercules. In September 2014, Robison and Hercules came to an agreement as to a payment plan regarding the past due invoices (the "September Agreement"). In October 2014, however, Hercules demanded full payment of the outstanding amounts at the alleged behest of ATD-H.

Robison also had a dealer agreement with Goodyear which was set for renewal in January 2015. Robison alleges that, due to pressures placed on Goodyear by ATD-H, that agreement was not renewed.

## II. DISCUSSION

### A. Standard of Review

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) ("To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555). A complaint containing mere "labels and conclusions, or a formulaic recitation of the elements" is insufficient. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) (citation and internal quotation marks omitted). However, "detailed factual allegations" are not required. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). Although courts are to accept all well-pleaded facts as true and view those facts in the light most favorable to the nonmoving party, courts are not required "to accept as true a legal conclusion couched as factual allegation." *Randall D.*

*Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted). "[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013) (quoting *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

Because the choice-of-law provision of the HPA states that Ohio law is to be applied, the parties generally agree that Ohio law applies to all claims sounding in contract and that Mississippi law applies to all claims sounding in tort. Their disagreements over choice-of-law are focused on the unlawful termination claim Robison brings, and the Court will therefore address those arguments under its analysis of that claim.

**B. Joinder of ATD-H**

Hercules and ATD-H argue that ATD-H has not been properly joined in this suit because the "cross-claim" against it is not proper under Rule 13(g) and because it is not a third-party defendant under Rule 14(a). However, though Robison incorrectly labels ATD-H as a "cross-defendant" and the claims against it as "cross-claims," and has admitted that this was inartfully done, its Answer [11] correctly joins ATD-H under Rule 20(a)(2). Rule 13(h) allows for "the addition of a person as a party to a counterclaim " so long as it meets the requirements of Rule 19 or 20. Fed. R. Civ. P. 13(h). Rule 20(a)(2) allows for the joinder of defendants so long as the claim arises "out of the same transaction, occurrence, or series of transactions or occurrences" and there is a common question of fact or law. Fed. R. Civ. P. 20(a)(2).

There is no question that ATD-H was properly joined with respect to the tortious interference claim pleaded against both ATD-H and Hercules, and all the claims against only ATD-H were part of the same series of events as the claims against Hercules and involve common

questions of fact. Therefore, the Court finds that, though incorrectly labeled a "cross-defendant," ATD-H was properly joined as a party under Rules 13(h) and 20(a)(2).

### C. Breach of Contract – HPA

Robison claims that Hercules breached the HPA by selling their products to ATD-H within Robison's exclusive territory. However, the HPA explicitly states that "HERCULES assumes no responsibility for any PRODUCTS which may be sold in the TERRITORY by others" and that it "reserves the right to sell in the TERRITORY any of its products or services." (HPA [11-1] at ¶ 2.) With this language, Hercules retained the right to sell its products in Robison's exclusive territory and denies responsibility if third parties, such as ATD-H, sell its products in the territory. Therefore, Hercules actions in selling ATD-H its products within Robison's exclusive territory could not have breached the HPA because the HPA specifically allowed for it. The breach of contract claim regarding Hercules' breach of the HPA, then, must fail, and it will be **dismissed with prejudice**.

### D. Breach of Contract – September Agreement

Robison argues that Hercules also breached the September Agreement, which was a modification of the HPA. Hercules counters that, because the HPA contained a clause prohibiting oral modification, the September Agreement is not enforceable. This is a claim under contract law, and therefore the Court applies Ohio law.

Under Ohio law, even if where a written contract includes a no-oral-modification clause, that clause may be waived by the parties' actions. *3637 Green Rd. Co., Ltd. v. Specialized Component Sales Co., Inc.*, 69 N.E.3d 1083, 1092 (Ohio Ct. App. 2016).

> As applied to contracts, waiver is a voluntary relinquishment of a known right. Waiver assumes one has an opportunity to choose between either relinquishing or enforcing of the right. A party who has a duty to perform and who changes its

> position as a result of the waiver may enforce the waiver. The party asserting waiver must prove the waiving party's clear, unequivocal, decisive act.

*Id.* at 1093 (quoting *EAC Props., LLC v. Brightwell*, No. 10AP-853, 2011 WL 1944101, at *5 (Ohio Ct. App. May 17, 2011)) (internal citations and quotations omitted). "The issue of whether a no-oral-modification clause or a written waiver clause has been waived by a parties' [sic] actions is a question of fact." *Id.* (citing *Field Excavating, Inc. v. McWane, Inc.*, No. CA2008-12-114, 2009 WL 3721013, at *4 (Ohio Ct. App. Nov. 9, 2009)).

In its Answer [11], Robison alleges that Jed Emans, Hercules's national sales manager, and Narciso Munez, Hercules's credit manager, entered into the September Agreement on behalf of Hercules and agreed that Robison would pay the $273,000 balance at the time and make additional payments on balances past due by the end of September 2014. (*See* Answer [11] at ¶ 14.) Emans and Munez also agreed to extend the due date on all outstanding invoices by thirty days, in exchange for a one percent charge on each invoice. (*See id.*) In light of this agreement, Robison paid the $273,000, and made additional payments of $160,000, and Hercules continued to ship its products to Robison. (*See id.* at ¶ 15.) Also included as part of the Robison's pleading is an email from Munez to Emans and other Hercules personnel[1] which details the terms of the agreement. (*See* Exhibit 1 to Robison's Letter [11-3].)

While ultimately the question of whether Hercules's actions amounted to "clear, unequivocal, decisive" acts that waived the no-oral-modification clause is a question for a jury, the Court finds that the allegations contained in the Answer [11] and its attached exhibits are enough that a jury could find a waiver has been made. The Motion to Dismiss [22] will therefore be **denied** as to this claim.

---

[1] Included on this email are Joshua Simpson, Janelle Wise, Suzette Wohlgamuth, and Mark Beth, but the Court has no knowledge of their positions with Hercules.

### E. Tortious Interference with Hercules

Robison brings claims of tortious interference with business relations and tortious interference with a contract against ATD-H, who it claims unlawfully interfered with its dealings with Hercules. ATD-H argues, though, that any interference done by it was "privileged interference" because Hercules is its wholly-owned subsidiary. Alternatively, it argues that it holds a position of responsibility over Hercules and is privileged. ATD-H also makes a general, conclusory argument that Robison has not sufficiently pleaded the malice element of these claims. Because these claims are brought under tort law, Mississippi law applies.

For a tortious interference with business relations claim, "a cause of action exists where one engages in some act with a malicious intent to interfere and injure the business of another, and injury does in fact result." *Par Indus., Inc. v. Target Container Co.*, 708 So.2d 44, 48 (Miss 1998) (quoting *Cenac v. Murray*, 609 So.2d 1257, 1271 (Miss. 1992)) (alterations omitted). A tortious interference with contract claim requires:

> (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted. The plaintiff must prove that an enforceable obligation existed between the plaintiff and another party.

*Id.* (internal citations and quotations omitted).

ATD-H's contention that Robison has not sufficiently pleaded malice is baseless. The Answer [11] alleges that ATD-H, a competitor of Robison, directed Hercules to breach the September Agreement and discontinue its business relationship with Robison, with no right or justification for doing so. Under *Par Industries*, this is sufficient to plead malice. *See* 708 So.2d at 48. The Court now turns to ATD-H's argument that it was privileged to interfere with the contract and relationship between Hercules and Robison.

ATD-H admits that no Mississippi court has held that a parent corporation is "privileged" to interfere with the relationships and contracts of its wholly owned subsidiaries, and this Court is hesitant to apply Mississippi law in ways which no Mississippi court has done before. (*See* Memo. in Support [23] at p. 15.) Furthermore, under Mississippi law,

> [t]he applicable principle is not simply that one in a position of responsibility has an absolute privilege to interfere with another's employment. Rather, the rule is this: one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third party.

*Gillespie v. City of Macon, Miss.*, 485 F.Supp.2d 722, 730 (S.D. Miss. 2007) (quoting *Morrison v. Miss. Enter. for Tech., Inc.*, 798 So.2d 567, 574 (Miss. Ct. App. 2001) (emphasis, alterations, and internal quotations omitted). Because Robison has pleaded sufficient allegations to establish malice, the Court finds that it has also sufficiently pleaded allegations of bad faith.[2] Therefore, the Court does not find that ATD-H's position of responsibility over Hercules defeats Robison's claims of interference with contract or with business relations with Hercules, and the motion will be **denied** as to these claims.

### G. Tortious Interference of Business Relations with Goodyear[3]

Robison also brings a claim of tortious interference with business relations against ATD-H and Hercules for their alleged interference with its relationship with Goodyear. For a tortious interference with business relations claim, "a cause of action exists where one engages in some act with a malicious intent to interfere and injure the business of another, and injury does in fact result." *Par Indus.*, 708 So.2d at 48. Robison alleges that "representatives of ATD[-H] had been pressuring Goodyear not to renew Robison's Goodyear agreements." (Answer [11] at ¶ 23.) This

[2] Because ATD-H is asserting a "privilege" and privileges are generally considered to be affirmative defenses, the Court is unsure if a finding that Robison had failed to plead allegations of bad faith would have an impact on this analysis.

[3] This claim is listed twice as Count IV and Count VI.

is sufficient to plead "some act" done by ATD-H "with a malicious intent to interfere and injure the business" of Robison. *See Par Indus.*, 708 So.2d at 48. Robison has also sufficiently pleaded that Goodyear would have renewed its agreements with Robison absent ATD-H's pressuring. (*See* Answer [11] at ¶¶ 20-21.) Goodyear's agreements with Robison were ultimately not renewed, causing Robison injury. (*See id*. at ¶ 22.) Robison has therefore properly pleaded this claim against ATD-H, and the motion will be **denied** as to the interference claim with Goodyear claim against ATD-H. However, because Robison specifically alleges that ATD-H, and not Hercules, was the one who pressured Goodyear into not renewing, the motion will be **granted** with respect to the interference claim against Hercules, and it will be **dismissed with prejudice**.

### H. Unlawful Termination of Contract

Robison brings a claim under Mississippi's Repurchase Statute, §§ 75-77-1, *et seq.*, against Hercules. The analogous statute under Ohio law does not allow tire distributors to recover.[4] *See B & S Transp., Inc. v. Bridgestone Ams. Tire Operations*, No. 5:13-CV-2793, 2014 WL 3687777, at *3 (N.D. Ohio July 24, 2014).

A federal court sitting in diversity is bound to follow the substantive law of the forum state, including that state's conflict of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co*, 313 U.S. 487, 496, 313 S. Ct. 1020, 1021, 85 L. Ed. 1477 (1941); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 114 A.L.R. 1487 (1938). In Mississippi, a choice of law analysis is only appropriate where there is a true conflict between the laws of two or more states having an interest in the litigation. *Zurich Am. Ins. Co. v. Goodwin*, 920 So.2d 427, 487 (Miss. 2006) (citing *Boardman v. United Servs. Auto. Ass'n*, 470 So.2d 1024, 1038 (Miss. 1985)). Once a true conflict

[4] The Mississippi Repurchase Statute may or may not allow a tire distributor to recover. No court has decided this question. Because the Court ultimately finds that Ohio law should apply, it will decline to answer this question and will apply the choice-of-law analysis as if this is a true conflict.

is found to exist, Mississippi then employs a three-step choice of law analysis: (1) determine whether the conflicting laws are substantive or procedural; (2) classify the area of substantive law, whether tort, property, or contract; and (3) look at the relevant section of the Restatement (Second) of Conflict of Laws. *Id.* at 488.

This Court has already determined that there is a conflict between the Mississippi and Ohio repurchase statutes. These are substantive laws sounding in contract. The Court now looks to the applicable section of the Restatement (Second) of Conflict of Laws, which states in relevant part:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflicts § 187 (1971). Because the Mississippi Repurchase Statute does not allow for its provisions to be waived by contract, the Court finds that this issue could not have been resolved by explicit provision in the contract and will therefore apply § 187(2). *See* Miss. Code Ann. § 75-77-19(1). The question then becomes whether Mississippi Repurchase Statute

represents a "fundamental policy" to which the application of Ohio law would be contrary.[5] The Court does not find that it does.

This Court has previously held that the mere enactment of a statute at issue does not elevate that statute to "such an important public policy of Mississippi that a contrary law from another state can never be applied." *Superfos Invs. Ltd. v. FirstMiss Fertilizer, Inc.*, 809 F.Supp. 450, 454-455 (S.D. Miss. 1992). To be a "fundamental policy" that estops the application of a chosen state's law, a statute must "represent fundamental and deeply ingrained public policy." *Id.* at 455 (citations and internal quotations omitted). "To be 'fundamental,' a policy must in any event be a substantial one." Restatement (Second) of Conflicts § 187 (1971), cmt. g.

Nothing in the Mississippi Repurchase Statute, or any case law concerning it, suggests that the statute embodies a substantial public policy for the state of Mississippi. Furthermore, Robison has cited no authority which would lead the Court to find that the Repurchase Statute did represent a fundamental policy of Mississippi. Therefore, the Court finds that the proper law to be applied is the law of Ohio. Because the parallel Ohio statute does not allow tire distributors to recover, the Motion to Dismiss [22] will be **granted** as to this claim, and it will be **dismissed with prejudice**.

**I. Punitive Damages**

ATD-H and Hercules argue that punitive damages are not properly pleaded because Robison has not sufficiently pleaded any cause of action that involves "actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65. The Court has found, though, that Robison has adequately pleaded its interferences claims against ATD-H, all of which require malice.

[5] There is no argument that Ohio has no relationship with the parties or the transaction.

Therefore, the claim for punitive damages has been properly pleaded against ATD-H, and the motion will be **denied** as to this claim. However, the only claim pending against Hercules is the breach of contract claim regarding the September Agreement, and a breach of contract claim does not involve malice, gross negligence, or fraud. Therefore, the motion will be **granted** with respect to the punitive damages claim against Hercules, and it will be **dismissed with prejudice**.

## III. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Dismiss [22] is **granted in part** and **denied in part**.

It is **granted** in that the following claims are **dismissed with prejudice**: the breach of contract claim against Hercules regarding the HPA; the tortious interference with business relations claim against Hercules; the unlawful termination claim against ATD-H and Hercules; and the punitive damages claim against Hercules.

It is **denied** in that the following claims remain pending: the breach of contract claim against Hercules regarding the September Agreement; the tortious interference with business claim against ATD-H for interference with the relationship between Robison and Hercules; the tortious interference with a contract claim against ATD-H for interference with the contract between Robison and Hercules; the tortious interference with business relations against ATD-H for interference with the relationship between Robison and Goodyear; and the punitive damages claim against ATD-H.

SO ORDERED AND ADJUDGED, on this, the 22nd day of March, 2017.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE